IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY MCNEAL | ) |
| | ) |
| Plaintiff | ) |
| | ) No.   3:24-cv-619 |
| v. | ) |
| | ) |
| Nathan Tucker, | ) |
| in his individual capacity, and | ) |
| Warden Daniel Monti, | ) |
| in his official and individual capacities, | ) |
| | ) |
| | ) |
| Defendant. | )   JURY TRIAL DEMANDED |
| | ) |

## COMPLAINT

Anthony McNeal, through his counsel, Uptown People's Law Center, complains against Defendants Nathan Tucker and Daniel Monti as follows:

### JURISDICTION AND VENUE

1. This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Mr. McNeal's rights as secured by the First Amendment to the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

4. Plaintiff Anthony McNeal was transferred from Pinckneyville Correctional Center to Centralia Correctional Center in Centralia, Illinois, a medium-security state prison for men operated by the Illinois Department of Corrections ("IDOC").

5. Mr. McNeal at all times relevant hereto has been imprisoned at Centralia Correctional Center.

6. From approximately April 2022 to March 1, 2023, Mr. McNeal taught the Civics class for prisoners at Centralia Correctional Center.

7. Defendant Nathan Tucker is a counselor employed by the Illinois Department of Corrections. During the times relevant to this complaint, he was assigned to work at Centralia Correctional Center. He is sued in his individual capacity.

8. At all times relevant to this complaint, Defendant Tucker was acting within the scope of his employment with the Illinois Department of Corrections and under color of state law.

9. Daniel Monti at all times relevant hereto was employed by the Illinois Department of Corrections and was the warden at Centralia Correctional Center. He is sued in his individual capacity for damages and in his official capacity for injunctive relief.

10. At all times relevant to this complaint, Defendant Monti was acting within the scope of his employment with the Illinois Department of Corrections and under color of state law.

## FACTS

### Re-Entering Citizens Civics Education Act

11. The Re-Entering Citizens Civics Education Act ("the Act"), 730 ILCS 200/1, et seq., requires the IDOC to provide programs led by peer educators to educate other incarcerated individuals about their voting rights within 12 months of their projected release date.

12. The primary goals of the Act are to inform incarcerated individuals leaving IDOC about their voter eligibility during their release process and how voting is vital to successful re-entry.

13. The Act requires the workshops to broadly focus on teaching incarcerated individuals why voting matters; about elections, forms of government and various elected positions; instructions on how to register to vote and how to fill out standard sample ballots; and on the history and importance of voting.

14. The Act requires that the curriculum is peer-led by an incarcerated individual who undergoes specialized training to teach the class.

15. The specialized training is done by either an experienced peer educator or an established nonpartisan civic organization that provides adequate training on matters

including, but not limited to, voting rights, governmental institutions, current affairs, and simulations of voter registration, election, and democratic processes.

16. The Civics class curriculum, based on the Act, specifically highlights topics such as a brief history of voting rights in the U.S., felony disenfranchisement, voting in midterm elections, the Jim Crow era, no taxation without representation, political parties, election day, branches & levels of government, and the elections calendar.

17. Mr. McNeal volunteered to teach the civics class as a peer educator shortly after the law went into effect. He first taught the class at Pontiac Correctional Center beginning in 2019 after completing the appropriate required training in accordance with the Act.

18. When Mr. McNeal was transferred to Centralia Correctional Center in February 2022, Mr. McNeal discovered that Centralia did not offer a civics class as required by law. He volunteered to teach the class, and began teaching at Centralia in April 2022 as the peer educator.

### The March 1, 2023 Civics Class

19. On March 1, 2023, Mr. McNeal was performing his assignment as peer educator at Centralia Correctional Center.

20. That day's curriculum included discussion of poll taxes, literacy tests and other Jim Crow laws.

21. During class, one of the student-inmates asked Mr. McNeal a question about the Jim Crow laws.

22. Mr. McNeal described the use of poll taxes and literacy tests as a means to suppress the Black vote.

23. Literacy tests[1] and poll taxes were tools used by many southern states to suppress the Black vote. Aside from the fact, evidenced from the face of the tests, that they have no relationship to any legitimate purpose, the States that used these tests regularly exempted from the testing requirement any prospective voter who was a veteran, or who was the descendent of a veteran.

24. Despite these well-established facts, defendant Tucker, who was assigned to monitor the class, cut off Mr. McNeal and instructed him not to discuss racism in the class. Defendant Tucker insisted that Mr. McNeal present literacy test as having a legitimate nondiscriminatory purpose of ensuring that voters "knew what they were voting for."

25. Mr. McNeal responded to Defendant Tucker's interruption that the racial intent of these laws was part of the curriculum and was part of what he was supposed to be teaching according to the Act.

---

[1] Copies of the Alabama and Louisiana tests are attached to this complaint as Exhibits One and Two.

26. At the end of class, Defendant Tucker demanded the notes Mr. McNeal had prepared for himself to teach the class, and when Mr. McNeal refused, the counselor had an officer confiscate the notes.

27. Mr. McNeal was issued the following disciplinary report:

> Offenses: 304 Insolence, 313 Disobey Direct Order, 308 u/a (unauthorized) Property. On the above date and approx time I was in Civics Class with my Peer Educator McNeal #B34835. One of the IIC who was in class had a question about some material. The peer educator used his views and u/a property to say it was all about racism to black people. As I saw the class start engaging with the racist direction McNeal was leading them down, I intervened and using our curriculum. McNeal started to argue with me. He continued to argue with me and l said we would discuss it after class. I was worried that the class would get out of order and become an issue if we kept in that direction. After the class I said I needed his notes. He refused. I called for officer Berry #9862 for assistance. Berry retrieved the notes for me. McNeal disobeyed a Direct Order, brought/taught unapproved material, and argued against me in front of my class. McNeal was warned multiple times to not teach or bring u/a material. McNeal ID'd by State ID.

### Harm Resulting from Defendant's Misconduct

28. On March 8, 2023, Mr. McNeal was found guilty of all charges contained in this disciplinary report by the Centralia Program Committee. The Committee recommended that he be reassigned and no longer permitted to each the civics class.

29. On March 23, 2023, Defendant Monti approved the Committee's recommendation, and Mr. McNeal was no longer allowed to teach the class.

6

30. Mr. McNeal was dismissed from his position as peer educator, leaving Centralia Correctional Center without a peer educator to teach the civics class as required by the Act.

31. On March 7, 2023, Mr. McNeal wrote a personal letter to Defendant Monti, describing what had happened to him. Mr. Monti never responded.

32. On March 10, 2023, Mr. McNeal filed a grievance against Counselor Tucker which was denied by Defendant Monti on May 9, 2023.

33. Defendant Monti's decision denying the grievance was affirmed by the Director on December 1, 2023.

34. As of today, Mr. McNeal has not been permitted to resume teaching the civics class, nor has he been assigned to any other prison job.

35. For many months after firing Mr. McNeal, Centralia Correctional Center had no peer educator to teach the Civics Class and was thus in violation of state law.

### Injuries Suffered by Plaintiff

36. As a result of the wrongful conduct by defendants described in this complaint, Mr. McNeal suffered injuries, including but not limited to:

   a. He lost his job teaching the Civics Class.

   b. He was not able to be assigned to any other job at Centralia.

   c. He has lost the ability to collect pay for any job assignment which included extra pay.

    d.   He suffered humiliation and mental and emotional damage as a result of being the target of racist actions.

    e.   He suffered injury to his reputation.

## Count One
### 42 U.S.C. § 1983 – First Amendment

37.    Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

38.    As described in further detail above, Defendants Tucker and Monti violated Plaintiff's rights under the First Amendment of the U.S. Constitution by restricting Plaintiff's class from engaging in protected First Amendment activity for no legitimate penological purpose.

39.    The misconduct described in this count was undertaken intentionally, with malice, and/or with reckless disregard to Plaintiff's rights.

40.    As a result of the misconduct described in this count, Plaintiff's rights were violated and he suffered harm.

## Count Two
### 42 U.S.C. § 1983 – First Amendment Retaliation

41.    Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

42.    As described in further detail above, Plaintiff and the students of the class engaged in protected First Amendment activity, Defendants caused him to suffer a

deprivation likely to deter further First Amendment activity, and this First Amendment activity was the motivating factor in Defendants' decision-making.

43. The misconduct described in this count was undertaken intentionally, with malice, and/or with reckless disregard to Plaintiff's rights.

44. As a result of the misconduct described in this count, Plaintiff's rights were violated and he suffered harm.

## Count Three
### 42 U.S.C. § 1983 – Fourteenth Amendment Racial Discrimination

45. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

46. Plaintiff states this cause of action against Defendant Monti in his official capacity for purposes of seeking declaratory and injunctive relief and against both defendants in their individual capacities for purposes of seeking compensatory and punitive damages.

47. The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

48. The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution requires that all people be treated equally under the law without regard for their race or ethnicity.

49. Defendants' insistence that Plaintiff, a Black person, lie to the class and tell them that the literacy tests and poll taxes imposed by southern states prior to the Civil Rights Acts were race neutral, and punishing him for telling the truth that these laws were intended to (and did in fact) suppress the number of Black people able to vote created a hostile work environment and constitutes intentional or at least callous and reckless discrimination against Plaintiff on the basis of race, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

50. As a result of the misconduct described in this count, Plaintiff's rights were violated and he suffered harm.

## Count Four
## Violation of Title VI of the Civil Rights Act

51. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

52. Regulations adopted by the United States Department of Justice provide that programs funded by the Department of Justice cannot engage in activities which have a racially discriminatory impact.

53. The Illinois Civil Rights Remedies Restoration Act (775 ILCS 60, et seq) provides a remedy under state law for (among other things) violations of Title VI of the Civil Rights Act.

10

54. Defendants' insistence that Plaintiff, a Black person, lie to the class and tell them that the literacy tests and poll taxes imposed by southern states prior to the Civil Rights Acts were race neutral, and punishing him for telling the truth that these laws were intended to (and did in fact) suppress the number of Black people able to vote had a discriminatory impact on Black people, including both the students in the class and Mr. McNeal.

## REQUEST FOR RELIEF (All Counts)

WHEREFORE, Plaintiff Anthony McNeal respectfully requests that the Court enter judgment in his favor and:

A. A declaration that Defendants Monti and Tucker were wrong for claiming that literacy tests were not racist and for preventing the teaching of this approved curriculum;

B. Preliminary and permanent injunctive and equitable relief against Defendant Monti in his official capacity including but not limited to reinstatement of Plaintiff's teaching position at Centralia Correctional Center; and

C. Monetary relief against both Defendants Monti and Tucker in their individual capacities including compensatory damages, punitive damages, and attorneys' fees and costs, and for any other relief that this Court deems just and proper.

**Jury Demand**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues so triable.

                                                  Respectfully Submitted,

                                                  ANTHONY MCNEAL

                                                  /s/ Alan Mills
                                                  One of Plaintiff's attorneys

Alan Mills
Uptown People's Law Center
4413 N. Sheridan
Chicago, Illinois 60640
(773) 769-1411